IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TONY ARTIS; QUINTA OKUWA and MICHAEL WOOTEN, Individually and On Behalf of All Others Similarly Situated, | § § § § § | |
| | § | |
| v. | § § | |
| | § | CIVIL ACTION NO. 3:10-cv-00323 |
| WILLIE LEE ASBERRY, JR., Individually and d/b/a A&A TRANSPORTATION; STEPHANIE D.  ASBERRY, Individually and d/b/a A&A TRANSPORTATION et al. | § § § § § § | [Consolidated] |

DEFENDANTS AMERICAN MEDICAL RESPONSE, INC., AMERICAN
MEDICAL RESPONSE OF TEXAS, INC., AND EMERGENCY MEDICAL
SERVICES CORPORATION'S REPLY IN FURTHER SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  **ARGUMENTS AND AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  A. **AMR Defendants Are NOT a Joint Employer of Plaintiffs, And As Such Must Be Dismissed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

  1. **Question of "Joint Employment" Is A Question of Law And As Such Appropriate for Summary Judgment Determination** . . . . . . . . . . . . . . . 3

  2. **The Record Does Not Reflect Any Unresolved Issues Regarding The Absence of Joint Employment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

  3. **Not Only Is Plaintiffs' Reliance on *Rutherford* Misplaced, But *Rutherford* Is Yet Another Reason Why AMR Defendants' Summary Judgment Must Be Granted** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

  B. **AMR Texas and EMSC Have No Connection Whatsoever With Subcontractor Defendants, The Plaintiffs, Or This Lawsuit, and As Such Must Be Dismissed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  C. **All Claims Against the AMR Defendants Based on Plaintiffs' Former Employment with the Calvary Transportation Services, Inc. Must be Dismissed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

  D. **All Claims by Plaintiffs Against the AMR Defendants Must be Dismissed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

  E. **All Claims by Plaintiff Hudson Against the AMR Defendants Must be Dismissed** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

  F. **Plaintiffs Do Not Dispute that this Action should NOT be Certified as a Collective Action** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

  G. **Plaintiffs Are Entitled to Their Exemption Defenses from FLSA Coverage** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# <u>CASES</u>

*Castillo v. Givens,*
     704 F.2d 181 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Clearline Techs., Ltd. v. Cooper B-Line, Inc.,*
     No. H–11–1420, 2012 WL 1640861 (S.D. Tex. May 9, 2012) . . . . . . . . . . . . . . . . . 15

*Gray v. Powers,*
     673 F.3d 352 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6, 7, 15

*In re Merrill Lynch Trust Co. FSB,*
     235 S.W.3d 185 (Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jeanneret v. Aron's East Coast Towing, Inc.,*
     No. 01-8001-CIV, 2002 WL 32114470 (S.D. Fla. Jan. 29, 2002) . . . . . . . . . . . . . . 6, 7

*Layton v. DHL Exp. (USA), Inc.,*
     686 F.3d 1172 (11th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11. 13

*Mendez v. Timberwood Carpentry & Restoration, LLC,*
     No. H-09-490, 2009 WL 4825220 (S.D. Tex. Dec. 9, 2009) . . . . . . . . . . . . . . . 3, 4, 5, 6

*Reilly v. TXU Corp.,*
     No. 3:05-cv-0081-M, 2009 WL 857598 (N.D. Tex., Mar. 31, 2009) . . . . . . . . . . . . . 16

*Robicheaux v. Radcliff Material, Inc.,*
     697 F.2d 662 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rutherford Food Corp. v. McComb,*
     331 U.S. 722 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Santelices v. Cable Wiring, Inc.,*
     147 F.Supp.2d 1313 (S.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sorbinio v. Med. Cen. Vis's Lodge, Inc.,*
     474 F.3d 828 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Valdez v. Cox Commucations Las Vegas, Inc.,*
     No. 2:09–CV–01797–PMP–RJJ, 2012 WL 1203726 (D. Nev., Apr. 11, 2012) . . . 3, 8, 10

*Von Friewalde v. Boeing Aerospace Operations, Inc.,*
     339 Fed. Appx. 448 (5th Cir.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 12

## STATUTES

29 U.S.C. § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

29 U.S.C. §207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

## EXHIBIT LIST

| Exhibits | Description of Exhibits |
|---|---|
| 1 | AMR, Inc.'s Subcontractor Agreement with A&A Transportation (Filed Under Seal) |
| 2 | AMR, Inc.'s Subcontractor Agreement with La Mode Concierge (Filed Under Seal) |
| 3 | AMR, Inc.'s Subcontractor Agreement with Halo Transport (Filed Under Seal) |
| 4 | AMR, Inc.'s Responses to Plaintiffs' First Set of Interrogatories |
| 5 | Plaintiffs Fourth Amended Initial Disclosures |
| 6 | Plaintiffs Fifth Amended Initial Disclosures |
| 7 | Tonya Artis Responses to AMR, Inc.'s First Set of Request for Production |
| 8 | Quinta Okuwa Responses to AMR, Inc.'s First Set of Request for Production |
| 9 | Michael Wooten Responses to AMR, Inc.'s First Set of Request for Production |
| 10 | Donna King Responses to AMR, Inc.'s First Set of Request for Production |
| 11 | Charles Hudson Responses to AMR, Inc.'s First Set of Request for Production |
| 12 | Victor Steward Responses to AMR, Inc.'s First Set of Request for Production |
| 13 | Eliza Benitez Responses to AMR, Inc.'s First Set of Request for Production |
| 14 | Jonathan Young Responses to AMR, Inc.'s First Set of Request for Production |
| 15 | Kenneth Patterson Responses to AMR, Inc.'s First Set of Request for Production |
| 16 | Robin Cates Responses to AMR, Inc.'s First Set of Request for Production |
| 17 | Tommy Horton, Jr. Responses to AMR, Inc.'s First Set of Request for Production |
| 18 | Crystal Milburn Responses to AMR, Inc.'s First Set of Request for Production |
| 19 | Shari Shalow-Wilson Responses to AMR, Inc.'s First Set of Request for Production |
| 20 | Tyrone Cook Responses to AMR, Inc.'s First Set of Request for Production |
| 21 | Tonya Artis Responses to AMR, Inc.'s First Set of Interrogatories |
| 22 | Quinta Okuwa Responses to AMR, Inc.'s First Set of Interrogatories |
| 23 | Michael Wooten Responses to AMR, Inc.'s First Set of Interrogatories |
| 24 | Donna King Responses to AMR, Inc.'s First Set of Interrogatories |

25    Charles Hudson Responses to AMR, Inc.'s First Set of Interrogatories

26    Victor Steward Responses to AMR, Inc.'s First Set of Interrogatories

27    Eliza Benitez Responses to AMR, Inc.'s First Set of Interrogatories

28    Jonathan Young Responses to AMR, Inc.'s First Set of Interrogatories

29    Kenneth Patterson Responses to AMR, Inc.'s First Set of Interrogatories

30    Robin Cates Responses to AMR, Inc.'s First Set of Interrogatories

31    Tommy Horton, Jr. Responses to AMR, Inc.'s First Set of Interrogatories

32    Crystal Milburn Responses to AMR, Inc.'s First Set of Interrogatories

33    Shari Shalow-Wilson Responses to AMR, Inc.'s First Set of Interrogatories

34    Tyrone Cook Responses to AMR, Inc.'s First Set of Interrogatories

35    Tonya Artis Responses to AMR, Inc.'s First Set of Request for Admissions

36    Quinta Okuwa Responses to AMR, Inc.'s First Set of Request for Admissions

37    Michael Wooten Responses to AMR, Inc.'s First Set of Request for Admissions

38    Donna King Responses to AMR, Inc.'s First Set of Request for Admissions

39    Charles Hudson Responses to AMR, Inc.'s First Set of Request for Admissions

40    Victor Steward Responses to AMR, Inc.'s First Set of Request for Admissions

41    Eliza Benitez Responses to AMR, Inc.'s First Set of Request for Admissions

42    Jonathan Young Responses to AMR, Inc.'s First Set of Request for Admissions

43    Kenneth Patterson Responses to AMR, Inc.'s First Set of Request for Admissions

44    Robin Cates Responses to AMR, Inc.'s First Set of Request for Admissions

45    Tommy Horton, Jr. Responses to AMR, Inc.'s First Set of Request for Admissions

46    Crystal Milburn Responses to AMR, Inc.'s First Set of Request for Admissions

47    Shari Shalow-Wilson Responses to AMR, Inc.'s First Set of Request for Admissions

48    Tyrone Cook Responses to AMR, Inc.'s First Set of Request for Admissions

49    Tonya Artis Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

50    Quinta Okuwa Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

51    Michael Wooten Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

52    Donna King Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

53      Charles Hudson Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

54      Victor Steward Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

55      Eliza Benitez Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

56      Jonathan Young Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

57      Kenneth Patterson Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

58      Robin Cates Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

59      Tommy Horton, Jr. Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

60      Crystal Milburn Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

61      Shari Shalow-Wilson Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

62      Tyrone Cook Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

63      Crystal M. Semmes Responses to AMR, Inc.'s Second Set of Request for Admissions and Second Set of Interrogatories

64      *Mendez v. Timberwood Carpentry & Restoration, LLC*, No. H-09-490, 2009 WL 4825220, *5 (S.D. Tex. Dec. 9, 2009)

### Exhibit List Continued with Reply Brief

65      *HHSC Contract with Texas Health and Human Services Commision,* Bid No. B442006072073000 (FILED UNDER SEAL)

66      *AMR Network Provider Procedure Manual for the Texas Medical Transportation Program,* AMR000031-56 (FILED UNDER SEAL)

67      *Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, No. H-11-1420, 2012 WL 1640861, at *6 (S.D. Tex. May 9, 2012)

68      *Reilly v. TXU Corp.*, No. 3:05-cv-0081-M, 2009 WL 857598, at *2 (N.D. Tex., Mar. 31, 2009)

69      Not Used.

70      *Valdez v. Cox Commucations Las Vegas, Inc.*, No. 2:09–CV–01797–PMP–RJJ, 2012 WL

1203726, at *6 (D. Nev., Apr. 11, 2012)

71    *Jeanneret v. Aron's East Coast Towing, Inc.*, No. 01-8001-CIV, 2002 WL 32114470, at *5
       (S.D. Fla. Jan. 29, 2002)

72    9-17-2012, Declaration of Dan Cyr

73    *Shari Shalow-Wilson et al. v. Calvary Transport Servbices, LLC, et al.*, 4:09-cv-3987, S.D.
       Tex.,  Docket sheet

74    *Shari Shalow-Wilson et al. v. Calvary Transport Servbices, LLC, et al.*, 4:09-cv-3987, S.D.
       Tex.,  (Dkt. No. 53)

Defendants American Medical Response, Inc. ("AMR, Inc."), American Medical Response of Texas, Inc. ("AMR Texas"), and Emergency Medical Services Corporation ("EMSC") (collectively "AMR Defendants"), through their undersigned counsel and pursuant to FED.R.CIV.P 56, hereby file their Reply to Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 102), and in further support of their Motion for Summary Judgment on Plaintiffs' Second Amended Complaint (Dkt. No. 96), as set forth in the following Memorandum of Law.

## I.   <u>INTRODUCTION</u>

There are essentially five issues that this Court must decide in view of AMR Defendants' Motion for Summary Judgment.

1.   Whether, as a matter of law, AMR Defendants were Joint Employers of Plaintiffs under the FLSA?

2.   Whether, as a matter law, AMR Texas and EMSC are joint employers of Plaintiffs merely through their affiliation with AMR, Inc.?

3.   Whether the Calvary Transportation related Plaintiffs claims against the AMR Defendants should be dismissed?

4.   Whether this Court should dismiss Plaintiffs' claims for failing to provide any evidentiary support or respond to discovery request, as in *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 452-53 (5th Cir.2009)?

5.   Whether this Court should certify this Action as a collective action?

Respecting the Plaintiffs' claims that AMR Defendants are their joint employer, the cases before this Court, the Fifth Circuit and other Federal Districts and Circuits show that entities

1

such as AMR, Inc. who engaged the services of independent contractors such as Subcontractor Defendants, are not the type of entity upon which the individual subcontractor employees economically depend for purposes of the FLSA and as such, are not a joint employer to such Subcontractor Defendants' employees such as Plaintiffs. The record before this Court and the Plaintiffs' Response In Opposition to Defendants' Motion for Summary Judgment fail to highlight any fact issue respecting the absence of joint employment. Thus, AMR Defendants' Motion for Summary Judgment must be granted.

Moreover, respecting AMR Texas and EMSC, the undisputed facts of the case establish that these entities are not connected to this lawsuit, at all. The facts are undisputed that the contracts with the Subcontractor Defendants is between AMR, Inc. and those Subcontractor Defendants—not AMR Texas, nor EMSC. As such, AMR Texas and EMSC should be summarily dismissed from this case.

The record before this Court finally shows that the Calvary Transportation related Plaintiffs claims against the AMR Defendants should be dismissed, as Calvary Transportation is not a party to this action. The record also establishes that Plaintiffs have failed to provide any evidence to support their claims and their claims must be dismissed. Lastly, Plaintiffs did not dispute that this Court should NOT certify this Action as a collective action. As such the AMR Defendants' Motion for Summary Judgment should be granted.

## II.   ARGUMENTS AND AUTHORITIES

### A. AMR Defendants Are NOT a Joint Employer of Plaintiffs, And As Such Must Be Dismissed

#### 1.   Question of "Joint Employment" Is A Question of Law And As Such Appropriate for Summary Judgment Determination

The United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") has repeatedly held that the ultimate determination as to whether an entity is an individual's "joint employer" under the FLSA is a legal determination, and any subsidiary factual issues leading to this determination are questions of fact. *See, e.g., Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983). Thus, where there are no unresolved subsidiary issues of fact as to the absence of joint employment, the Court, and not the fact-finder, must decide the same as a matter of law. *See, e.g. Castillo v. Givens*, 704 F.2d 181, 185-87 (5th Cir. 1983) (holding that the district court erred in submitting the issue of employment under FLSA to the jury as there were no unresolved issues of fact that could change the court's conclusion as to the plaintiff's employment status) (reversed on other grounds).

In fact, courts routinely adjudicate the issue of joint employment under the FLSA at summary judgment stage. *See, e.g., Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012) (affirming this Court's grant of summary judgment of no joint employment); *see also, e.g., Mendez v. Timberwood Carpentry & Restoration, LLC*, No. H-09-490, 2009 WL 4825220, at *5 (S.D. Tex. Dec. 9, 2009) (granting summary judgment against FLSA plaintiffs because, *inter alia*, the defendant was not a "joint employer") (attached as Ex. 63 in AMR Defs' Mot. (Dkt. No. 97-63))[1]; *Valdez v. Cox Commucations Las Vegas, Inc.*, No. 2:09–CV–01797–PMP–RJJ, 2012 WL

---

[1] AMR Defendants have continued the exhibit numbering used in the AMR Defendants Mot.

1203726, at *6 (D. Nev., Apr. 11, 2012) (granting summary judgment against FLSA plaintiffs that the defendant was not a joint employer of its contractor's employees who installed cables for the defendant) (attached as Ex. 70); *Santelices v. Cable Wiring, Inc.*, 147 F.Supp.2d 1313, 1327-28 (S.D. Fla. 2001) (granting summary judgment against FLSA plaintiff finding that based on the record, the court could not conclude that the plaintiff was economically dependent upon FLSA defendant).

As explained in AMR Defendants' Motion for Summary Judgment and in more detail below, Plaintiffs were employees of Defendant Subcontractors, entities which in turn engaged in standard independent subcontracting arrangement with AMR Defendants.[2]  As acknowledged by this Court in *Mendez*, such standard independent subcontracting arrangement is "a relationship the law has resisted deeming as a dual employment situation." *Mendez*, 2009 WL 4825220, at *1.  Moreover, Plaintiffs have failed to highlight, because the record does not reflect, any subsidiary issues of fact regarding the presence of only a standard independent subcontracting arrangement in the instant case, guided by the Texas Health and Human Services Commission Contract ("HHSC Contract"), which encourages entities like AMR Inc. to engage services of independent contractors like Subcontractor Defendants. *See* Dan Cyr Dec. at ¶¶5-7 (Ex. 72).  If the Court were to adopt Plaintiffs argument, any provider of transportation services under the HHSC Contract would be considered the joint employer with their subcontractor, and even the Texas Health and Human Services Commission would be considered a joint employer of Plaintiffs.

---

[2] As explained in Section B below, AMR Texas and EMSC have had no connection, contractual or otherwise, with Plaintiffs or Subcontractor Defendants.  Any references to occurrences between Plaintiffs/Defendant Subcontractors and AMR Defendants Section A pertains only to AMR, Inc.

### 2. The Record Does Not Reflect Any Unresolved Issues Regarding The Absence of Joint Employment

As stated in AMR Defendants Motion for Summary Judgment, respecting joint employment under the FLSA, the Fifth Circuit has adopted the "economic reality" test which encompasses inquiries into whether the purported employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* at *5. Plaintiffs have had sufficient time to obtain discovery on the joint employer issue in this two year old case. Yet, even when viewed in light most favorable to Plaintiffs, Plaintiffs' contentions about joint employment either lack support in the record before this Court, or are insufficient to raise a genuine issue of material fact as to the absence of joint employment, or both. As prescribed by the Fifth Circuit, "mere conclusory allegation and inference are not sufficient to prove the required linkage" that must be present for a finding of joint infringement. *See Gray*, 673 F.3d at 355.

Specifically, Plaintiffs state AMR Defendants "are responsible for 'the coordination, control and performance of all subcontractors[,]' including wage and hour law." *See* Dkt. No. 102 at 11. *See* Dan Cyr Dec. at ¶8.[3] The conclusory nature of this statement notwithstanding, the statement was taken directly from the HHSC Contract, which includes standard information and guidelines on the requirements imposed on entities such as Subcontractor or AMR Defendants, included in a request for proposal submitted by AMR

---

[3] Many of Plaintiffs' statements are simply false and are unsupported by the record. The vast remainder of those statements only make reference to the requirements under the HHSC Contract, which have all been addressed in the Declaration of Dan Cyr (Ex. 72), *See* Dan Cyr Dec. at ¶¶1-35.

Inc. *See Id.*, Ex. 65, and Pls.' Dkt. 102, Ex. C at pp. AMR000255, AMR000306. But such conclusory allegations that are reflective only of the standard language present the HHSC Contract documents do not—and cannot—raise a material fact issue respecting the degree of control required for a finding of joint infringement, especially when the contract with AMR Inc. does not restrict Plaintiffs or Subcontractor Defendants in their ability to conduct business with others. *See* Dan Cyr Dec. at ¶27; *see also, e.g., Gray*, 673 F.3d at 355 (noting that "mere conclusory allegation and inference are not sufficient to prove the required linkage" that must be present for a finding of joint infringement); *see also Mendez*, 2009 WL 4825220, at *7 (finding that the "standard non-solicitation provision" had no bearing on the issue of joint employment). Further, other courts have determined that an entities compliance with regulatory requirements does not put that entity in the realm of a joint employer by complying with the regulations. *See e.g., Jeanneret v. Aron's East Coast Towing, Inc.*, No. 01-8001-CIV, 2002 WL 32114470, at *5 (S.D. Fla. Jan. 29, 2002) (finding that the FLSA plaintiffs' reliance on subscriber service agreement language stating that the Aron's "retains authority to hire, terminate, discipline, and reassign the leased employees" to raise a fact issue as to Aron's power to hire/fire was misplaced because "[t]his language essentially incorporate[d] the requirement of Fla. Stat. § 468.525(4)(d)")

Furthermore, Plaintiffs' claim that the AMR Defendants "retain the power to hire, fire, discipline and train the Subcontractor Defendants' employees, including Plaintiffs." As an initial matter, Plaintiffs' statement is false. *See* Cyr. Dec. ¶¶ 24-27. In fact, the contracts between AMR Inc. and Subcontractor Defendants unambiguously state that Subcontractor Defendants are "responsible for all aspects of day-to-day operations of the service, including

employment of personnel, supervision of operators, and vehicle/equipment maintenance." *See* Ex Nos. 1, 2, 3, Section 5.8(i) at AMR000010, AMR000348, AMR000393; *see also* Dkt. No. 102, Ex. G, ARTIS0922[4]; *see also* Cyr. Dec. ¶¶ 12-27.  As such, to the extent AMR Inc. has any impact of the Plaintiffs' employment status, such impact lies indirectly in its right to assure that Subcontractor Defendants comply with their contractual obligations. *See* Cyr. Dec. ¶¶ 8-10, 24-28. And more importantly, such indirect impact is limited only to Plaintiffs' dealings with AMR Inc., and in no way extended to Plaintiffs' employment status in general, or Plaintiffs' ability to serve other business entities as employees of Subcontractor Defendants. *See* Cyr. Dec. ¶¶ 24-27, 34.  Moreover, such level of indirect involvement limited only to Subcontractor Defendants' dealing with AMR Inc. does not raise a material fact issue respecting AMR Defendants' power to hire and fire the Plaintiffs. *See, e.g., Gray*, 673 F. 3d at 355 (finding that the defendant's participation in a joint decision with the plaintiffs' direct employer proved nothing about whether the defendant had the authority to independently control employment terms of the plaintiff employees); *see also Jeanneret v. Aron's East Coast Towing, Inc.*, No. 01-8001-CIV, 2002 WL 32114470, at *5 (S.D. Fla. Jan. 29, 2002) (finding that the FLSA plaintiffs' reliance on subscriber service agreement language stating that the Aron's "retains authority to hire, terminate, discipline, and reassign the leased employees" to raise a fact issue as to Aron's power to hire/fire was misplaced because "[t]his language essentially incorporate[d] the requirement of Fla. Stat. § 468.525(4)(d)" and the plaintiff had proffered no evidence tending to dispute the assertion that Aron's, and not

---

[4] Note that this document provided by Plaintiffs is unsigned.

7

Sunshine, in practice exercised exclusive control over the FLSA plaintiffs' day-to-day work) (attached as Ex. 71).

Plaintiffs also claim that AMR Defendants "instruct the Subcontractor Defendants on what to wear, when to eat, what to say, what to drive, what holidays to take, and what music to listen to." *See* Dkt. No. 102, at 11. But even as expressed in Plaintiffs' own statement, AMR Inc. provides **Subcontractor Defendants**— and not Plaintiff employees— instructions and guidelines on how to operate their business under the contract with AMR Inc. *See* Cyr. Dec. ¶¶ 12-28, and 32-34. Indeed, the "instructions" Plaintiffs refer to are also part of HHSC Contract, which includes information on the requirements imposed on entities such as Subcontractor Defendants by the State of Texas, provided to Subcontractor Defendants as part of a Request for Proposal. *See* Dan Cyr Dec. at ¶¶12-28, and 32-34; *see also* Ex. 65, AMR000243-AMR000247*; see also,* Dkt. No. 102, Ex. C, Request for Proposal at pp. AMR000243-AMR000247. For instance, it is the HHSC Contract that dictates the non-service days, which only include Federal holidays. (Ref. Attachment F - Authorized Holidays.). *See* Dan Cyr Dec. at ¶¶16-17. And the HHSC Contract provides that the only non-service days include the holidays of Thanksgiving Day, Christmas Day, and New Year's Day. *Id.* Additionally, the HHSC Contract dictates that providers ensure that: 1) operators consider the comfort of recipients, make rest stops and other reasonable accommodations as requested by recipient; and 2) operators interact in a professional manner, which includes, at a minimum, avoiding offensive language or topics, maintaining an appropriate professional relationship and treating passengers with respect. *See* Dan Cyr Dec. at ¶¶13, 32. As such, AMR, Inc. provides driver protocols to the Subcontractor Defendants, so that the

subcontractors can remind their drivers to be cognizant of radio volume and to prohibit offensive music. *See* Dan Cyr Dec. at ¶¶13, 32.

And as noted above, to the extent AMR Defendants provide any instructions at all, such instructions are provided to Subcontractor Defendants, and relates generally the HHSC Contract's regulations and/or other guidelines on how to operate under their mutually agreed upon contractual terms. *See* Dan Cyr Dec. at ¶¶12-28, and 32-34. In any event, the provision of instructions by AMR Inc. to help the Subcontractor defendants in reaching their mutual macro-level goal does not raise a material fact issue respecting joint employment. *See, e.g., Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1178-81 (11th Cir. 2012) (affirming summary judgment of no joint employment when the FLSA plaintiffs could not begin work until informed by the defendant's employees, who routinely inspected the FLSA plaintiffs' vehicles and uniforms which bore the names of both the defendants and their direct employer, finding this type of control to be the "abstract" type of control typically indirectly present in a subcontractor setting, and different from the type of control exercised by an employer) [hereinafter *DHL*].

Plaintiffs also state that "the AMR Defendants even provide their subcontractors and their subcontractors' employees with call logs that must be completed and are responsible for scheduling drop-offs and pick-ups for the subcontractors' employees." While it is true that AMR, Inc. provides the Subcontractor Defendants with call logs, which is required by the HHSC Contract (*see* Cyr. Dec. ¶¶18)—it is not true that AMR, Inc. is responsible for, nor does AMR, Inc. schedule the drop-offs and pick-up for the Subcontractor Defendants' employees. *See* Cyr. Dec. ¶34. Instead, based on the client requests, which AMR, Inc. receives

9

from the HHSC system, AMR Inc. determines which Subcontractor Defendant would be the appropriate Subcontractor Defendant to provide transportation services for that client or a number of clients, and then submits this information, including pick-up and drop-off locations and times, to the Subcontractor Defendants.  *Id.*   AMR, Inc. does not tell the Subcontractor Defendants how to divide up the list, which of their employees they should assign to a particular client, or any other information.  *Id.*   The control of the Subcontractor Defendants' employee assignments for a scheduled AMR, Inc. client pick up and drop off is controlled solely by the Subcontractor Defendants, and not by AMR, Inc.  *Id.*   Thus , while AMR Inc. may schedule drop-offs and pick-ups for each of the Subcontractor Defendants it utilizes for a project—it is the Subcontractor Defendant that assigns its particular employees for each trip—not the AMR Defendant.  *See* Cyr. Dec. ¶34.

Plaintiffs also state that "the AMR Defendants' telephone number even features prominently on their subcontractors' business cards."  *See* Doc. No. 102, Page 11-12.  The HHSC Contract's communication requirements require that AMR, Inc.'s clients be provided with a toll free 24 hour number to reach AMR, Inc.  *See* Dan Cyr Dec. at ¶¶12-28, and 32-34. In any event, as repeatedly stated herein, these types of arrangements, such as deciding on which Subcontractor Defendant will be responsible for assigning pick up/drop off times to their employees, usage of call logs, or appearance of contact information business cards, made by AMR Inc. and Defendant Subcontractors in light of their mutual macro-level goal, do not raise a material fact issue respecting joint employment. *See, e.g., Valdez v. Cox Communications Las Vegas, Inc.,* No. 2:09–CV–01797–PMP–RJJ, 2012 WL 1203726, at *4 - *6 (D. Nev., Apr. 11, 2012) (granting the defendant's summary judgment of no joint employment for a defendant who, *inter alia*, had contract with a contractor required the

contractor and its FLSA plaintiff subcontractor employees to comply with a code of excellence, and scheduled the appointments for the installations performed by the FLSA plaintiffs); *see also Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1174, 1179 (11th Cir. 2012) (finding that presence defendant's logos on Plaintiffs' uniform or equipment rented from the defendants to records delivery logs was far from raising an fact issue regarding the FLSA Plaintiffs' economic dependence on the defendants).

Thus, even when viewed in light most favorable to Plaintiffs, Plaintiffs' contentions about joint employment either lack support in the record before this Court, or are insufficient to raise a genuine issue of material fact as to the absence of joint employment, or both.  As such, this Court should grant AMR Defendants' Motion for Summary Judgment.

### 3. Not Only Is Plaintiffs' Reliance on *Rutherford* Misplaced, But *Rutherford* Is Yet Another Reason Why AMR Defendants' Summary Judgment Must Be Granted

In support of the claim that Subcontractor Defendants and AMR Defendants are their joint employers under the FLSA, Plaintiffs rely on *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947), stating that *Rutherford* is "virtually indistinguishable" from the case at bar. *See* Dkt. No. 102, at 11.  However, not only are the facts of *Rutherford* distinguishable from the case at bar, but other Courts have already distinguished *Rutherford* when faced with similar factual settings, as are before this Court.

In *Rutherford,* the Supreme Court found that under the FLSA, meat boners recruited by a labor contractor to work at a slaughterhouse were joint employees of the slaughterhouse. *Id.* at 729.  The Court did not focus on the fact that the workers used their own tools and were labeled as independent contractors. *Id.* at 724-25.  Instead, the Court

focused on the fact that the workers completed one process in the middle of a series of interdependent steps at the slaughterhouse; this led the Court to conclude that the workers performed "a specialty job on the production line" that was "more like piecework," and unlike an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor." *Id.* at 730. Stated differently, because the workers were part of an "integrated unit of production" of the slaughterhouse, the Court found them to be employees of the establishment. *Id.* at 729. Such is not the case with the Plaintiffs' transportation operations.

Here, Plaintiffs were drivers employed by Subcontractor Defendants, which are companies that offered transportation services to AMR Inc. as well as others. *See* Dkt. No. 102, at 7; *see also* Dan Cyr Dec. at ¶34. Each trip performed by a Plaintiff driver is a task unrelated to any other performed by other Plaintiff drivers. *See e.g.*, Dan Cyr Dec. at ¶34. Also, a trip is not a part of other interdependent tasks performed by AMR Inc.'s employees. As such, Plaintiffs' involvement with AMR Inc. could not be any more different than "employees working at a particular position on a larger production line," as the case was in *Rutherford*. Moreover, unlike the meat boners in *Rutherford* who worked on slaughterhouse's premises, Plaintiffs performed their duties away from AMR Inc.'s facilities and supervision, and did not work alongside other AMR Inc. employees. *See e.g.*, Dan Cyr Dec. at ¶15. Furthermore, Plaintiffs also operated vehicles not owned by AMR Inc., and were at no time contractually limited from operating those vehicles in performing transportation services for others. *See* Dan Cyr Dec. at ¶¶15, 27. Thus, *Rutherford* is inapposite. *See, e.g., Valdez v. Cox Commucations Las Vegas, Inc.*, No. 2:09–CV–01797–PMP–RJJ, 2012 WL 1203726, at *4 - *6

12

(D. Nev., Apr. 11, 2012) (distinguishing *Rutherford* and granting the defendant's summary judgment that the defendant was not a joint employer of its contractor's employees who installed cables for the defendant).

In fact, faced with facts nearly identical to the case at bar, the United States Court of Appeals for the Eleventh Circuit recently distinguished *Rutherford* and granted defendants summary judgment of no joint employment.  In  *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012),  DHL, a provider of shipping and logistic services, contracted Sky Land, a third party contractor who employed drivers to deliver DHL's packages.  *Id.* at 1174. The drivers hired to deliver DHL packages had to pass a background check, and drove vehicles owned by Sky Land. *Id.* 1179-80.  The drivers could not begin work until informed by DHL employees, and DHL employees would routinely inspect the drivers' vehicles and uniforms, which bore the names of both DHL and Sky Land, to ensure that they conformed to the standards specified in the contract between them. *Id.* at 1173-74, 1178.  Drivers spent the majority of their days making DHL deliveries in their vehicles, would receive information regarding customer complaints and other non-routine matter from DHL, and used scanners leased from DHL to log pick-up/drop-off times.  *Id.* at 1173-74.  In fact, unlike the Plaintiffs here who have no connection with AMR Defendants' business premises, the drivers in *DHL* would even pick up the packages from DHL's warehouse.  *Id.* at 1179. Applying the same "economic reality" factors espoused by the Fifth Circuit in assessing joint employment, the court affirmed a summary judgment of no joint employment, and stated:

> Here, DHL bore no financial or managerial responsibility for Drivers. For the most part, DHL simply tasked Sky Land, and thus Drivers, with macrolevel goals—deliver the packages, respond to customer complaints—and provided little guidance regarding the manner by which to execute daily tasks. Sky Land

> alone held the power to hire, fire, and pay Drivers. Sky Land alone owned the vans that allowed Drivers to complete their essential job function, and because Sky Land's contract with DHL was not exclusive, Sky Land could have served other companies using those vehicles. We find that the totality of the economic circumstances indicates that Drivers were not economically dependent upon DHL, and we therefore affirm the district court on the grounds that DHL was not a joint employer of Drivers.

*Id.* at 1181. Just as the Eleventh Circuit held in *DHL*, this Court short find that no genuine issues of material facts exists as to joint employment, and accordingly grant AMR Defendant's Motion for Summary Judgment.

### B. AMR Texas and EMSC Have No Connection Whatsoever With Subcontractor Defendants, The Plaintiffs, Or This Lawsuit, and As Such Must Be Dismissed

Plaintiffs do not make even a colorable attempt to refute the undeniable fact that AMR Texas and EMSC are in no way connected to Plaintiffs or their employer Subcontractor Defendants, and should therefore have summary judgment granted in their favor. Plaintiffs were employees of Subcontractor Defendants. It is undisputed that Subcontractor Defendants had a contractual relationship with AMR Inc.—and not with AMR Texas or EMSC. It is also undisputed that AMR, Inc., AMR Texas, and EMSC are separate entities. *See* Dkt. No. 102 at 4, FN4. Throughout this litigation, Plaintiffs have never provided any evidence or justification, nor can they, to include AMR Texas and EMSC in this lawsuit. In fact, the only statement Plaintiffs make in a failed attempt to rebut the fact that AMR Texas and EMSC have no connection to Subcontractor Defendants or Plaintiffs is reduced to only a footnote, wherein Plaintiffs state that AMR, Inc. and AMR Texas "are wholly owned subsidiaries" of EMSC. *See* Dkt. No. 102 at 4, FN4. Plaintiffs' reliance on the organization relationship of the AMR Defendants is misplaced for several reasons.

14

As an initial matter, the very organizational chart that Plaintiffs rely on to show that AMR, Inc. and AMR Texas "are wholly owned subsidiaries" of EMSC does not reflect the same. *See* Dkt. No. 102-1 (Ex. A. Pls.' Resp.).   In fact, in the chart, AMR is only shown to be affiliated with Emergency Medical Services LP, the general partner of EMSC, and AMR Texas is not even referenced. *Id.*   Moreover, this chart has a date of January 2006—more than six years ago.   A simple review of Plaintiffs' Complaint shows that this document has no evidentiary value—as the earliest date any of the Plaintiffs were allegedly employed by Subcontractor Defendants was February 2009.   *See* Dkt. No. 78, ¶¶ 26-30.   There is simply no legal or factual basis to support the inclusion that AMR Texas and EMSC in this lawsuit. And the claims against AMR Texas and EMSC should be dismissed.

Moreover, as highlighted in AMR Defendants' Summary Judgment Motion and not disputed by Plaintiffs, a contract with one business entity is not a contract with its organizational affiliates.  *See* Dkt. No. 96 at 7 (citing *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007); *see also* Dkt. No. 102 at 4.   In fact, in the Fifth Circuit, there is a strong presumption that an entity's employees are not legally the employees of that entity's organizational affiliates such as its parent or subsidiary corporation, and a status-based inference cannot alone create a fact issue regarding joint employment. *See, e.g., Gray v. Powers*, 673 F.3d 352, 356 (5th Cir. 2012) (recognizing that the corporate form should not be easily disregarded in the context of FLSA and accordingly, "a status-based inference of control cannot alone suffice to create a genuine fact issue" regarding the power and control over employees of other entities); *see also Clearline Techs., Ltd. v. Cooper B-Line, Inc.*, No. H–11–1420, 2012 WL 1640861, at *6 (S.D. Tex. May 9, 2012) (acknowledging that it cannot be inferred,

solely on the basis of indirect ownership, that defendant had an actual or apparent partnership with affiliate entities) (attached as Ex. 67); *Reilly v. TXU Corp.*, No. 3:05-cv-0081-M, 2009 WL 857598, at *2 (N.D. Tex., Mar. 31, 2009) (noting that "[i]n the Fifth Circuit, there is a strong presumption that a parent corporation is not the legal employer of its subsidiary's employees) (attached as Ex. 68).   Thus, even assuming, *arguendo*, that Plaintiffs were employees of AMR, Inc. under a joint employer theory because of AMR, Inc.'s contract with Plaintiffs' employers, the Subcontractor Defendants—which they were not— the record before this Court is still devoid of any support to rebut the undeniable fact that Plaintiffs are NOT employees of AMR Texas or EMSC.

It should be clear to the Court that Plaintiffs have failed to offer this Court any justification for disregarding Texas and the Fifth Circuit's legal precedent; or any justification for disregarding the organizational structure of the AMR Defendants.   This is because none exists.   Therefore, because no genuine issues of material fact exist regarding the lack of connection between AMR Texas and EMSC with Plaintiffs or their employer Subcontractor Defendants, this Court should grant the AMR Defendants' Motion and dismiss the claims against AMR Texas and EMSC.

## C. All Claims Against the AMR Defendants Based on Plaintiffs' Former Employment with the Calvary Transportation Services, Inc. Must be Dismissed

Plaintiffs filed this lawsuit on August 24, 2010.   *See* Dkt. No. 1.   Plaintiffs never joined Calvary Transportation Services, Inc., as a party to this Action.   Instead, Plaintiffs obtained an agreed judgment from Calvary Transportation Services, Inc., in another civil action suit in this Court, which was co-pending with this case.   *See Shari Shalow-Wilson et al. v.*

*Calvary Transport Servbices, LLC, et al.*, 4:09-cv-3987, S.D. Tex. (Dkt. No. 65), attached to Pls.' Resp. as Ex. E (Dkt. No. 102-3). The *Shalow-Wilson v. Calvary* suit did not conclude until March 2011. *See* attached Ex. 73 (docket sheet from the *Shalow-Wilson* litigation). If the AMR Defendants were joint employers with Calvary Transportation Services, Inc.—which they were not—the AMR Defendants should have been named as Defendants in that action. Plaintiffs never added the AMR Defendants to the *Shalow-Wilson v. Calvary* suit, nor did Plaintiffs add Calvary Transportation Services, Inc. as a necessary party to this Action pursuant to Fed. R. Civ. P. 19, although these suits were co-pending for at least seven months.

In fact, Plaintiffs' never disclosed Calvary Transportation, or their owners as persons with knowledge of relevant facts in their disclosures, despite knowing of their existence since before this Action was filed. *See* Dkt. No. 97-6, AMR Defs. Mot. Summ. J., Ex. 6 (Plaintiffs' Fourth Amended Initial Disclosures). Instead, Plaintiffs obtained an agreed judgment from the Calvary Transportation defendants without the AMR Defendants being able to defend themselves, and now attempt to bootstrap that agreed judgment against the AMR Defendants in this Action. Plaintiffs acknowledge that "Plaintiffs Victor Steward, Eliza Benitez, Jonathan Young, Kenneth Patterson, Robin Cates, Tommy Horton, Jr., Crystal Milburn, Shari Shalow-Wilson, Tyrone Cook and Crystal M. Semmes were actually employed by Calvary Transportation Services, Inc." *See* Dkt. No. 102, Pls.' Resp. at 5, FN6.

This Court should not allow Plaintiffs to attempt to manipulate the judicial process in this manner. Moreover, there is simply no evidence, nor can Plaintiffs provide any evidence, that the AMR Defendants were joint employers with Calvary Transportation Services. This

Court should therefore dismiss all claims against the AMR Defendants that arise out of Plaintiffs' employment with Calvary Transportation Services, Inc.

### D. All Claims by Plaintiffs Against the AMR Defendants Must be Dismissed

Here, Plaintiffs have burden of proving that they worked over forty hours within a workweek in violation of the FLSA and are entitled to overtime compensation. *Von Friewalde*, 339 Fed. Appx. at 452-53. Therefore, as to the issue of uncompensated overtime pay, and all issues on which the Plaintiffs bear the burden of proof at trial, "if the record, taken as a whole, could not lead a rational trier of fact to find for the Plaintiffs, then there is no genuine issue for trial," and summary judgment warranted as such. *Id.* The record shows that Plaintiffs have not met their burden. Even Plaintiffs Response to the AMR Defendant's Motion fails to rebut the facts, and fails to provide the Court with any reason to deny the AMR Defendants' Motion.

A simple review of Plaintiffs' Interrogatory Answers makes this painstakingly clear. *See e.g.*, Exs. 7-63. First, in response to the AMR Defendants' First Set of Interrogatories No. 2 and 4, 15 and 16, which all relate to Plaintiffs' employment history, job duties, positions, hours worked, and their allegations of underpayment, in order to substantiate their claims in this Action, Plaintiffs failed to provide any information to substantiate their claims. *See* Exs. 21-34. Next, when the AMR Defendants asked similar questions in an effort to illicit even a colorable attempt at an answer, Plaintiffs again failed to provide the requested answers. For example, in response to the AMR Defendants' Interrogatory numbers 23-24, which ask:

**ROG 23.** For each and every workweek during which you claim you were employed by Defendant, identify the starting and ending times and day of each shift you worked, the total number of hours you contend that you worked each week, your weekly income, and the total amount of remuneration to which you contend you are owed.

**ROG 24.** Identify in chronological order each entity or person for whom you have performed work, or applied for work, as an employee or independent contractor (including your own limited liability company, enterprise or business) from January 1, 2005 to the present, and as to each such entity or person, provide:

> a. your beginning and ending dates of employment;
>
> b. your job duties;
>
> c. your job title(s) or position(s);
>
> d. your supervisor(s); and
>
> e. any person to whom you submitted a resume, application or curriculum vitae or otherwise discussed your job duties and responsibilities, experience, education, certifications, licensure, training or other accomplishments.

Plaintiffs simply responded by identifying a quantity of damages without any of the requested underlying support for ROG 23, and for ROG 24, all, with the exception of Plaintiff Hudson, as noted below, included the name of their alleged previous employer, without any identification of their job duties or positions.  *See* Exs. 49-63.

As discussed above, when faced with similar facts, Courts have granted summary judgment against Plaintiffs who had not provided any substantive answers to the defendant's discovery.  *See Von Friewalde*, 339 Fed. Appx. at 455-56 (Fifth Circuit affirming summary judgment against those plaintiffs in a collective action who came forward with no summary-

judgment evidence and had not provided any substantive answers to the defendant's interrogatories). Based on these facts—or the lack thereof—this case is ripe for summary judgment adjudication and this Court should grant the AMR Defendants Motion.

### E. All Claims by Plaintiff Hudson Against the AMR Defendants Must be Dismissed

Plaintiffs have burden of proving that they worked over forty hours within a workweek in violation of the FLSA and are entitled to overtime compensation. *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 452-53 (5th Cir.2009). Therefore, as to the issue of uncompensated overtime pay, and all issues on which the Plaintiffs bear the burden of proof at trial, "if the record, taken as a whole, could not lead a rational trier of fact to find for the Plaintiffs, then there is no genuine issue for trial," and summary judgment warranted as such. *Id.*

As the evidence clearly shows, Plaintiffs discovery responses fail to raise an issue of material fact as to Plaintiffs claims against the AMR Defendants. Plaintiffs discovery responses fail to substantiate their claims, including their claims for damages. In fact, despite previous requests, Plaintiffs did not provide amounts for their alleged damages until July 2, 2012—the date for the close of discovery. *See* Exs. 5-6. Notwithstanding Plaintiffs collective failure to provide evidence to raise an issue of material fact, Plaintiff Hudson has failed to identify any Subcontractor Defendant that allegedly forms the basis of its claims against AMR, Inc. *See* Exs. 25 and 53. When faced with similar facts, Courts have granted summary judgment against Plaintiffs who had not provided any substantive answers to the defendant's discovery. For example, in *Von Friewalde*, 339 Fed. Appx. at 455-56, the U.S. Court of Appeals for the Fifth Circuit affirmed summary judgment against those plaintiffs in

a collective action who came forward with no summary-judgment evidence and had not provided any substantive answers to the defendant's interrogatories. This too should be the case here. This Court should dismiss the claims by Plaintiff Hudson, because there is no evidence, nor any issue of material fact to dispute that Plaintiff Hudson has not identified any alleged AMR, Inc. Subcontractor Defendant that he was employed by.

### F. Plaintiffs Do Not Dispute that this Action should NOT be Certified as a Collective Action

No where in Plaintiffs response do Plaintiffs dispute that this Action should NOT be certified as a Collective Action. This fact alone is sufficient to grant summary judgment that this Action should not be certified as a Collective Action. This is because Plaintiffs have no evidence, and have not provided responses to the AMR Defendants discovery request seeking same. *See* Exs. 21-34, Pls.' Resp. Interrog. Nos. 2 and 4, 15 and 16; *see also* Exs. 49-63, Pls.' Resp. Interrog. Nos. 23 and 24. In order to be certified as a collective action, Plaintiffs must show that they are "similarly situated." *Von Friewalde*, 339 Fed. Appx. 448 at 456. Plaintiffs have provided no evidence and no responses to discovery responses seeking facts or information that would tend to support or refute that certification under a collective action is warranted.

In *Von Friewalde*, the Fifth Circuit affirmed summary judgment against those plaintiffs in a collective action who came forward with no summary-judgment evidence and had not provided any substantive answers to the defendant's interrogatories. *Von Friewalde*, 339 Fed. Appx. 448 at 455-56. The appellants argued that there was a "common nucleus of liability facts" among all of their claims, but after reviewing the evidence, the Fifth Circuit found instead that "the details surrounding each of their claims vary in significant ways, such that

few if any of the appellants" were similarly situated for purposes of the FLSA. *Id.* at 456. Further, the Fifth Circuit found that "the claims of all those appellants who [had] not produced any evidence at all . . . necessarily fail[ed]" because those appellants had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories in support of their claims. *Id.* But as it stood, the Court found that like here, this Court knows "nothing of [the Plaintiffs] other than their names and the fact that they were allegedly employed in some unidentified capacity." *Id.*

Like the Fifth Circuit found in *Von Friewalde*, the details surrounding each of Plaintiff's claim vary in significant ways, such that few if any of Plaintiffs are similarly situated for purposes of the FLSA.  For example, the record shows that Plaintiffs were employed by different entities; some were employed by A&A Transportation, some by La Mode Concierge, some by HALO Transport, and some by non-party Calvary Transportation.  *See* Ex. 49-63, Pls.' Resp. Interrog. No. 24.  This fact alone warrants a finding that this Action should NOT be certified as a collective action.  Moreover, the record also shows in *Shari Shalow-Wilson et al. v. Calvary Transport Servbices, LLC*, et al., 4:09-cv-3987, S.D. Tex. (Dkt. No. 53) that Plaintiffs were employed by their employers in different capacities. *Shalow-Wilson,* Dkt. No. 53 attached as Ex. 74.  This is yet another factor, which establishes that this Action should NOT be certified as a collective action.

For any of these reasons, Plaintiffs' failure to dispute these arguments and facts in their Response, Plaintiffs' failure to provide discovery responses and evidentiary support for their claims, the fact that Plaintiffs were employed by different employers, and the fact that Plaintiffs were employed in different capacities, all warrant this Court granting the AMR

Defendants' Motion for Summary Judgment that this Action should NOT be certified as a collective action.

### G. Plaintiffs Are Entitled to Their Exemption Defenses from FLSA Coverage

At the outset, Plaintiffs arguments fail to rebut the fact that Plaintiffs have not shown that they employment was in the course of interstate commerce as required by the FLSA. *See* 29 U.S.C. §207; *see also Sorbinio v. Med. Cen. Vis's Lodge, Inc.*, 474 F.3d 828 (5th Cir. 2007) (finding that Plaintiff, who was a driver of hotel guests,  failed to satisfy his burden of showing that he was engaged in interstate commerce in order to entitle him to the FLSA's protections).  Plaintiffs argue that they do not have to show that their employers were engaged in interstate commerce because AMR, Inc. is an enterprise.  But this argument misses the point.  Plaintiffs must first show that they AMR, Inc. was a joint employer, before it can attempt to bootstrap an argument from unrelated materials that AMR, Inc. qualifies as an enterprise.[5]  As the foregoing shows, the AMR Defendants are not Plaintiffs' joint employers.  Hence, Plaintiffs must show that their employers were engaged in interstate commerce as it relates to Plaintiffs' employment.  *See* 29 U.S.C. §207; *see also Sorbinio*, 474 F.3d 828.

Next, Plaintiffs argue that when one intends to rely on an affirmative defense at trial, they must plead the same in their Answer. But this is exactly what the AMR Defendants have done.  *See* Dkt. Nos. 87, 88, 91.  And Plaintiffs indeed admit that AMR Defendants

---

[5] Plaintiffs attempt to use documents from unrelated proceedings in attempt to support their argument.  However, unlike the present Action, wherein AMR, Inc. contracts with Subcontractor Defendants to provide non-emergency transportation services via the Subcontractor Defendants, in other unrelated AMR, Inc. businesses, AMR, Inc. does, in some instances, hire ambulance drivers as their employees.  *See* Cyr Dec. at ¶35, Ex. 72.

have pleaded the affirmative defenses pertaining to the exemptions set forth in 29 U.S.C. §201 et seq.  *See* Pls.' Resp. at 15. Moreover, Plaintiffs have failed to propound any discovery whatsoever respecting the aforementioned affirmative defense on the AMR Defendants.  *See* Ex. 4.  Plaintiffs' arguments simply lack merit and relevance.

## III.   <u>CONCLUSION</u>

For any of the foregoing reasons, the AMR Defendants respectfully requests that this Court grant its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and dismiss all claims by Plaintiffs against the AMR Defendants.  Further, the AMR Defendants asks that it be granted such other relief, at law or in equity, to which it may show itself justly entitled.

Dated: September 18, 2012

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

/s/Mary-Olga Lovett
**Mary-Olga Lovett**
Texas Bar No. 00789289
Email: lovettm@gtlaw.com
**Tara M. Williams**
Texas Bar No. 24043999
Email: williamsta@gtlaw.com
**Pamela Ferguson Sperber**
Texas Bar No. 24059743
Email: sperberp@gtlaw.com
**Greenberg Traurig, LLP**
1000 Louisiana, Suite 1700
Houston, Texas  77002
Telephone:    713-374-3500
Facsimile:     713-374-3505

ATTORNEYS FOR DEFENDANTS
AMERICAN MEDICAL RESPONSE, INC.;
AMERICAN MEDICAL RESPONSE OF
TEXAS, INC.; AND EMERGENCY
MEDICAL SERVICES CORPORATION

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing instrument was served on all counsel of record via the Court's CM/ECF system on September 18, 2012.

/s/Tara M. Williams
Tara M. Williams